UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CRESO CARNEIRO CALMON BULCAO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02560-JRO-MJD |
| | ) | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Dr. Creso Carneiro Calmon Bulcao ("Dr. Bulcao") previously practiced medicine in Brazil. Since 2004, he has sought to obtain a license to practice medicine in the United States. He alleges that Defendant National Board of Medical Examiners ("the Board") breached its 2010 agreement with him when it capped the number of times applicants may sit for the United States Medical Licensing Examination ("USMLE"). Dr. Bulcao, who has sat for and failed the third Step ("Step 3") of the exam four times, is ineligible to sit for the exam again under the cap.

The Board now moves to dismiss under Rule 12(b)(6), dkt. [12], arguing that Dr. Bulcao has failed to state a breach of contract claim. Dkt. 12 at 11–12. The motion, dkt. [12], is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court takes all well-pled allegations as true and draws reasonable inferences in the nonmoving party's favor. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

**A. The Medical Licensing Test**

One way to earn a license to practice medicine in the United States is to pass the USMLE, which is administered in three separate parts: Steps 1, 2, and 3. Dkt. 12-1 at 1; Ind. Code § 25-22.5-3-1; 844 Ind. Admin. Code 4-4.5-8. The Board develops and administers the USMLE. Dkt. 12-1 at 2. To sit for any Step in the testing process, an individual must have passed the previous Step and have an MD or DO from an accredited US medical school, and the equivalent of an MD degree from a medical school outside the US or certification by the Educational Commission of Foreign Medical Graduates. *Id.* at 3.

**B. Dr. Bulcao's Testing History**

Dr. Bulcao practiced medicine in Brazil and in 2010 completed an orthopedic surgery fellowship with Indiana University's School of Medicine. Dkt. 7-1 at 121–23. In 2004, Dr. Bulcao started the process of taking the USMLE and passed Step 1 on July 19, 2004. Dkt. 7-1 at 117. He passed the final portion of Step 2 on October 13, 2006. *Id.* Dr. Bulcao did not attempt to take Step 3 of the exam until September 27, 2010, when he failed on this date and again on April 27, 2011, April 15, 2015, and December 21, 2015. *Id.* As of December 2015, Dr. Bulcao has failed Step 3 four times with no passing score on file.

**C. The Board's Policy History**

When Dr. Bulcao first attempted Step 3 in September of 2010, the Board permitted an unlimited number of attempts to complete all Steps. Dkt. 7- 1 at 39. In 2011, the bulletin governing the rules and procedures for taking the

USMLE noted that applicants should be aware of potential changes to the unlimited attempts policy, stating:

> At the time of publication of this *Bulletin*, the USMLE program imposed no limit on the number of times you can take a Step or Step Component you have not previously passed. During 2010–2011, the governance of the USMLE program will review this policy and may limit attempts at Steps and Step Components, beyond which other conditions on retesting may have to be met. If you are attempting to complete the USMLE sequence and have had multiple failures on your examination(s), you should closely monitor the USMLE website for announcements regarding changes to the attempt limit policy.

Dkt. 7-1 at 83. Shortly thereafter, in 2011, the Board adopted a limit of six attempts per Step exam. By 2022 it reduced the limit to four attempts per exam Step. Dkt. 7 at 6.

Dr. Bulcao did not take the exam during his extended eligibility period from October 1, 2021, to June 30, 2022, and his window to take Step 3 is now closed under the Board's current policy. Dkt. 7-1 at 120.

### D. Procedural History

Dr. Bulcao alleges that "the original term [of unlimited attempts in the 2010 exam] should [be] honored." Dkt. 15 at 4. He says that his "career is destroyed" and that "had [the attempt limit] not been introduced, [he] would have passed [Step 3]." *Id.* at 5. He calculates damages of $500,000 due to lost wages from the period of 2022 through 2025. *Id.* at 38. Dr. Bulcao filed this diversity action, asserting a single state-law breach-of-contract claim. Dkt. 7.

The Board filed its motion to dismiss, arguing that Dr. Bulcao's complaint was time barred by the applicable statute of limitations and that he failed to state

a claim. Dkt. 12. After the motion was fully briefed, this Court issued an order partially converting the Board's motion to dismiss to a motion for summary judgment on the statute of limitations issue to the extent it relied on evidence outside the pleadings. Dkt. 21.

**II. LEGAL STANDARD**

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A plaintiff may defeat a motion to dismiss filed pursuant to Rule 12(b)(6) if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plausible claim "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary-judgment stage," *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss under Rule 12(b)(6), the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal

conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## III. DISCUSSION

Dr. Bulcao seeks to enforce his 2010 agreement with the Board, which contains no limit to the number of times he could sit for any portion of the USMLE. To prevail in a breach of contract claim for services, a plaintiff must show a valid contract, the defendant's breach, and damages. *Karma Int'l., LLC v. Indianapolis Motor Speedway, LLC*, 938 F.3d 921, 926 (7th Cir. 2019) (quoting *U.S. Research Consultants, Inc. v. County of Lake*, 89 N.E.3d 1076, 1086 (Ind. Ct. App. 2017)). Dr. Bulcao's claim fails because the Board has already fully performed under the 2010 agreement, and every agreement thereafter. The Board has no present contractual obligation to allow Dr. Bulcao to sit for another exam. Without any contractual obligation there can be no breach.

### A. The Board Fully Performed

Dr. Bulcao entered into four separate contracts, one for each time he took the USMLE. Each time he took the exam, he paid a separate fee. The Board fully performed under each separate contract; it administered, scored and reported Dr. Bulcao's exam in each case. There is no breach.

Indiana law is clear: "if [] transactions are embodied in separate documents, each complete in itself, in the sense that ascertaining the terms does not require consulting the document for the other transaction, they are separate contracts." *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1439 (7th Cir. 1993). Further, where there is separate consideration for various

agreements—as there is for Dr. Bulcao's contracts—separate contracts exist. *See Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 891 (Ind. Ct. App. 2002) ("The usual test of the severability of a contract is the entirety or divisibility of the consideration . . . ."). Where there is full performance of a contract, there is no claim for breach. *Rhoads v. Jones*, 95 Ind. 341, 342 (1884) ("it is axiomatic that where there is performance there can be no breach"); *see also Breeding v. Kye's Inc.*, 831 N.E.2d 188, 191 (Ind. Ct. App. 2005) ("A party breaches a contract when it fails to perform all of the obligations that it has agreed to undertake.")

Dr. Bulcao acknowledges that he entered into his first contract with the Board in September 2010 to take Step 3 of the Licensing Exam for the first time. Dkt. 7-1 at 117. The relevant terms of the 2010 contract make clear that if an applicant fails the USMLE, they "must reapply by submitting a new application and fee." *Id.* at 40. The 2010 terms also make it unequivocally clear that future services for testing could be subject to new or updated contract terms, and that it was the duty of test-takers to familiarize themselves with the updated policies and procedures. The 2010 *Bulletin of Information* stated in **bold** language that candidates "**must become familiar with the information in this bulletin**" and must also "**become familiar with and will be subject to the policies and procedures detailed in the 2011 *Bulletin of Information***" if their testing "**eligibility period extend[ed] into 2011**." *Id.* at 34. Upon administration of Dr. Bulcao's score, the September 2010 contract and its respective terms ended. At this point in time, Dr. Bulcao was free to apply to enter into another contract of

service with the Board, or not. The Board had no duty to provide the USMLE under the same terms as its 2010 contract with Dr. Bulcao until he passed Step 3. Its duty was merely to administer the 2010 exam and report Dr. Bulcao's score, as evidenced by the score report attached to Dr. Bulcao's complaint. *Id.* at 117.

Dr. Bulcao entered his second contract with the Board when he signed up to take Step 3 a second time in April 2011. He signed a new contract, paid a new testing fee, and assented to the new testing terms delineated in the 2011 *USMLE Bulletin* in exchange for the Board's service of administering and scoring his exam. *Id.* The Board scored Dr. Bulcao's April 2011 test and reported his score. At this point, the Board had fully performed, and the April 2011 contract ended.

Dr. Bulcao entered his third contract with the Board in 2015, when he signed up to take Step 3 a third time in April. As before, he paid a separate fee and sat for the exam. Once the Board reported his April score, the April 2015 contract ended.

Finally, in December 2015, Dr. Bulcao entered his fourth and final contract with the Board, following the same sequence of events as before: signing a new document, paying a separate fee, sitting for the exam and receiving his score.

There is no ongoing contract between the parties for Dr. Bulcao to enforce now. The last contract between the Board and Dr. Bulcao for the service of administering the USMLE concluded in December of 2015 when the Board administered Step 3 and reported Dr. Bulcao's score to him. Dkt. 7-1 at 117.

Any future obligation to Dr. Bulcao by the Board would require a new application and fee payment from Dr. Bulcao. And even if Dr. Bulcao took this step, he would need to form a new contract for the Board's service. *See U.S. v. Stump Home Specialties Mfg., Inc.*, 905 F.2d 1117, 1122 (7th Cir. 1990) (applying Indiana Law and holding that slight consideration will suffice to make a new, enforceable contract or contract modification); *Martins v. Hill*, 121 N.E.3d 1066, 1068 (Ind. Ct. App. 2019) (the basic elements of a contract are "offer, acceptance, consideration, and manifestation of mutual assent").

The Court's analysis essentially ends here. But it is worth noting that the terms of the April and December 2015 contracts with Dr. Bulcao were outlined in the 2015 *USMLE Bulletin*, which included a limit of six attempts per Step. Dkt. 7-1 at 15. The terms of the 2015 contracts are clear—"The USMLE program limits to six the total number of times an examinee can take the same Step or Step Component." *Id.* When the Board decided to change its policy on test retakes again in 2021, reducing the number of permitted attempts from six to four, there was no contractual relationship between Dr. Bulcao and the Board at that time. If Dr. Bulcao wants to take the exam again, the Board is within its rights to refuse to contract with Dr. Bulcao a fifth time and enforce its new four-test limit. The Board, as a private organization, has the right to contract with whomever it chooses, imposing reasonable limitations. "[A]s a general rule, the law allows competent adults the utmost liberty in entering into contracts that, when entered into freely and voluntarily, will be enforced by the courts." *Zollman v. Geneva*

*Leasing Assocs., Inc.*, 780 N.E.2d 387, 392 (Ind. Ct. App. 2002). For this Court to dictate otherwise would interfere with the Board's freedom of contract.

Dr. Bulcao argues that the examination is "a continuous process until the examinee either passes or gives up on that exam." Dkt. 15 at 35. And he says that "[i]ntroducing new policies once this process has started" disrupted what examinees reasonably expected and that the 2010 *Bulletin of Information* "formed ongoing expectations and framework governing the examination process and pathway." *Id.* at 35, 37. It is clear Dr. Bulcao finds the Board's policy changes unfair and believes that is not how the examination contracts should work. *See id.* at 5. But this Court is bound to resolve disputes based on the terms of the contracts themselves, not what parties wish the contracts said. *Old Nat. Bank v. Kelly*, 31 N.E.3d 522, 531–32 (Ind. Ct. App. 2015).

In sum, because the Board fully performed under each of its separate contracts with Dr. Bulcao, it had no contractual obligations to Dr. Bulcao that could be breached by its institution of the four-attempt cap in 2021. Dr. Bulcao thus fails to state a breach of contract claim.

**B. Amendment is Futile**

Parties are often afforded the opportunity to amend their complaint after a court grants a motion to dismiss. But "courts in their sound discretion may deny a proposed amendment if . . . the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002)). Amendment is futile when the plain language of the contract at issue presents no support for claim upon which

relief can be granted. *Russell v. Zimmer*, 82 F.4th 564, 571 (7th Cir. 2023) (affirming district court's decision to deny leave to amend where the plain language of the contract made clear a breach of contract action could not be supported). Amendment is futile here. As explained above, there is no contract for Dr. Bulcao to enforce.

### C. Statute of Limitations Issue is Moot

Because the Court has granted the Board's motion to dismiss, the statute of limitations defense raised by the Board and thereafter converted into a summary judgment motion is **DENIED as moot**.

## IV. CONCLUSION

The Board's motion to dismiss is **GRANTED**, dkt. [12], the motion for summary judgment is **DENIED as moot**, and Dr. Bulcao's claim is **DISMISSED with prejudice**. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 9/2/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

CRESO CARNEIRO CALMON BULCAO
18930 Big Circle Drive
Noblesville, IN 46062

All Counsel of Record via CM/ECF.